IN THE DISTRICT COURT OF THE UNITED STATES

FOR THE DISTRICT OF SOUTH CAROLINA

| | |
|---|---|
| Patrick Guess, #253980, ) | CIVIL ACTION NO: 9:08-3076-TLW-BM |
| ) | |
| Plaintiff, ) | |
| ) | |
| v. ) | |
| ) | **REPORT AND RECOMMENDATION** |
| Jon Ozmint, Agency Director; Robert ) | |
| Ward, Division of Operations; Dennis ) | |
| Patterson, State Classification Committee; ) | |
| Cecilia Reynolds, Warden of Kershaw ) | |
| Correctional Facility; Monica Counts, ) | |
| SCDC State Classification; and Lisa Roach ) | |
| Case Worker Classification Division SCDC ) | |
| Kershaw Correctional Institute, ) | |
| ) | |
| Defendants. ) | |
| _____) | |

This action was filed by the Plaintiff, pro se, in the South Carolina Court of Common Pleas, Fifth Judicial Circuit. Plaintiff, an inmate with the South Carolina Department of Corrections, alleges, inter alia, that his constitutional rights are being violated because he is wrongfully being kept in administrative segregation. As Plaintiff is asserting a claim under the United States Constitution, the Defendants removed this case to Federal Court on September 5, 2008. 28 U.S.C. §§ 1331, 1441. At the time of the removal of this suit, Plaintiff had another case already pending in this Court, Guess v. Ozmint, Civil Action No. 9:08-2626, in which Plaintiff also complains about being kept in administrative segregation. Therefore, by Order filed January 8, 2009, Civil Action No. 9:08-2626 was consolidated into the case at bar (Civil Action No. 9:08-3076).

- 1 -



The Defendants filed a motion for summary judgment pursuant to Rule 56, Fed.R.Civ.P. on May 26, 2009. As the Plaintiff is proceeding pro se, a Roseboro order was entered by the Court on May 27, 2009, advising Plaintiff of the importance of a summary judgment and of the need for him to file an adequate response. Plaintiff was specifically advised that if he failed to adequately respond, the Defendants' motion may be granted, thereby ending his case. After receiving several extensions of time to respond, Plaintiff filed a memorandum in opposition to the Defendants' motion on August 5, 2009, to which the Defendants filed a Reply Memorandum on August 17, 2009.

Defendants' motion is now before the Court for disposition.[1]

**Background and Evidence**

In Civil Action No. 9:08-2626 (the case originally filed in this Court) Plaintiff alleged in his verified complaint[2] that between March and April of 2007 he was charged with sexual assault against another inmate. Plaintiff alleges that he was acquitted of this charge, and was returned to the general population at the Ridgeland Correctional Institution (where he was at that time housed). Plaintiff alleges that he was thereafter placed in "lock-up" on December 19, 2007 for possessing an alcoholic beverage, but that after a disciplinary hearing he was again found not guilty. Plaintiff

---

[1]This case was automatically referred to the undersigned United States Magistrate Judge for all pretrial proceedings pursuant to the provisions of 28 U.S.C. § 636(b)(1)(A) and (B) and Local Rule 73.02(B)(2)(d) and (e), D.S.C. The Defendants have filed motion for summary judgment. As this is a dispositive motion this Report and Recommendation is entered for review by the Court.

[2]In this Circuit, verified complaints by pro se prisoners are to be considered as affidavits and may, standing alone, defeat a motion for summary judgment when the allegations contained therein are based on personal knowledge. Williams v. Griffin, 952 F.2d 820, 823 (4th Cir. 1991). Plaintiff filed a verified Complaint in Civil Action No. 9:08-2626. Therefore, the undersigned has considered the factual allegations set forth in the verified Complaint in issuing a recommendation in this case.



alleges that on January 7, 2008, he was charged with sexual assault against another inmate, but was again found not guilty after a disciplinary hearing. Plaintiff alleges, however, that he was re-charged while still confined to solitary confinement, with that case being heard by a different disciplinary officer, who again found Plaintiff not guilty.

Plaintiff alleges that he was then confined in the SMU "Special Management Unit" at the Ridgeland Correctional Institution on March 18, 2008 for a PREA (Prison Rape Elimination Act) review. See 42 U.S.C. § 15601. Plaintiff alleges that he was notified of the Committee Review on April 2, 2008, and was "wrongfully" placed on security detention on April 7, 2008 in violation of PREA, classification, and SMU policy. Plaintiff alleges that he sent several letters to the Defendants Ward and Ozmint letting them know of witnesses who would give statements on his behalf, but that he was still wrongfully accused and punished by being labeled a sexual perpetrator, resulting in him being confined to lock-up.[3]

Plaintiff requests that he be compensated for each day he has been detained on lock-up status, that all lost good time and work credits be restored, and that he be released back to the general population. Plaintiff also seeks punitive damages for "defamation of character". Plaintiff has attached to his complaint a copy of a Step One Grievance form (Grievance KCI-483-08) wherein Plaintiff complains about his classification and confinement in the lock-up. See generally Plaintiff's Verified Complaint (Civil Acton No. 9:08-2626), with attached Exhibit.

In the case originally filed by the Plaintiff in the South Carolina Court of Common Pleas and then removed to this Court by the Defendants (Civil Action No. 9:08-3076), Plaintiff again

---

[3]Plaintiff was placed in PREA lock-up at the Kershaw Correctional Institution, although he has recently been transferred to the Tyger River Correctional Institution. See Court Docket No. 59 [Change of Address Notice].



alleges in a verified complaint[4] that he is being illegally restrained and confined in the SMU although he was found not guilty of any alleged offense. Plaintiff further alleges that guards "constantly gas you repeatedly", are constantly "stripping" out the cells, and that his freedom of religion is being "constantly violated" because he is being served pork. Plaintiff seeks monetary damages in addition to injunctive relief, as well as restoration of any lost work credits and good time. Plaintiff also attaches a second, "amended" complaint, in which Plaintiff again alleges that his "constitutional rights" are being denied because he was found not guilty of the violations of which he was charged but is still being held in administrative segregation "without cause or being formally charged". In addition to alleging violations of these constitutional rights, Plaintiff also alleges violations of various Department of Corrections' rules, policies and procedures, as well as the South Carolina Administrative Procedures Act. In a "declaration" attached to his amended complaint, Plaintiff makes state law claims of libel and slander for having been accused of committing actions he did not commit, and asks the "State Chief Administrative Judge" to release him from segregation. See generally, Plaintiff's filings in Civil Action No. 9:08-3076.

In support of summary judgment in the case, the Defendants have submitted an affidavit from Ann Hallman, who attests that she is an Inmate Grievance Administrator (IGA) with the Department of Corrections, and that she coordinates and administers portions of the SCDC inmate grievance procedure. Hallman attests that the Department of Corrections has an established inmate grievance procedure that allows inmates to grieve issues related to their confinement, including, but not limited to, the conditions of their confinement and classification issues. Hallman

---

[4]Plaintiff's pleading is styled "Motion for Preliminary Injunction", but has been docketed as a Complaint in which Plaintiff seeks, inter alia, injunctive relief. .



attests that, under this procedure, an inmate must first attempt to resolve the issue through an informal resolution, and that if this is not successful the inmate must then file a Step 1 grievance by filling out an Inmate Grievance Form, which must be submitted withing fifteen (15) days of the alleged incident or occurrence. If the inmate is not satisfied with the response to his Step 1 grievance, he must then appeal that response by checking the box on the response that states "I do not accept the Warden's decision and wish to appeal" within five days of receipt of that response. The inmate must then submit a Step 2 grievance form to the Inmate Grievance Coordinator (IGC) at the institution where he is housed. The response to the Step 2 grievance, or appeal, is considered the Department's final agency decision on the issue.

Hallman attests that Plaintiff received a classification from the SCDC PREA Committee and was transferred to the Kershaw Correctional Institution sometime in April 2008. Plaintiff's complaints (Civil Action Nos. 9:08-2626 and 9:08-3076) were filed between April and July 2008. Hallman attests that during the months April through July of 2008, Plaintiff filed eight inmate grievances, four of which involved his classification by the PREA Committee. The first of these four grievances was processed, with the other three being unprocessed as they duplicated the first one. Hallman attests that Plaintiff has received a final agency decision with regards to his grievance of the PREA Committee's decision concerning his current classification. That claim is therefore properly exhausted. However, with respect to the other four grievances filed by the Plaintiff during the relevant time period,[5] Hallman attests that none of these were appealed by the

---

[5]One of these grievances involved an appeal of a disciplinary decision, one involved allegations concerning cold food and size of portions, one involved allegations that Plaintiff was being denied copies and notary services, and one alleged that Plaintiff was being denied the opportunity to go to sick call or attend a medical appointment.



Plaintiff. See generally Hallman Affidavit.

The Defendant Cecilia Reynolds has submitted an affidavit wherein she attests that she is the Warden of the Kershaw Correctional Institution (KCI). Reynolds attests that Plaintiff was transferred to KCI from the Allendale Correctional Institution on or about April 14, 2008, and that she does not recall having any personal interactions with the Plaintiff since his arrival at KCI. Reynolds attests that Plaintiff's transfer was requested and completed due to the fact that Plaintiff had been classified as a sexual perpetrator under the Department's PREA policy.[6] Reynolds attests that she was not involved in Plaintiff being designated as a sexual perpetrator by the PREA Committee or with the decision to give Plaintiff a custody status of Security Detention (SD). Reynolds attests that, due to the fact that Plaintiff has been classified as PREA-SD, he must be housed in the SMU at KCI, and that Plaintiff's classification and custody status cannot be changed except by the PREA Committee through the process set forth in the PREA policy.

With respect to Plaintiff's complaints about the food being served in the SMU, Reynolds attests that inmates who wish to receive a specialized diet for religious reasons are required to contact the Chaplin's office, which will arrange to have the inmate placed on the religious diet they desire. Reynolds attests that, until May 6, 2009, Plaintiff had not requested to be placed on a specialized diet at KCI, but that Plaintiff is now on a specialized diet, and is being served a pork free diet per his request for religious reasons. Reynolds also attests that, based on her review of Plaintiff's records, he has not been "gassed" since his arrival at KCI, nor has any use of force been performed on him since his arrival at KCI, nor has Plaintiff had his cell "stripped" since his arrival

---

[6]Plaintiff is currently serving a twelve year sentence for a conviction on a charge of criminal sexual conduct with a minor, second.



at KCI. See generally Reynolds' Affidavit.

The Defendants have also submitted an affidavit from Jimmy Sligh, who attests that he is an Operations Coordinator with the Department of Corrections and is also a member of the PREA Committee. Sligh attests that the PREA Committee is a multi-disciplinary committee that consists of five members who meet to discuss inmates that have been referred to the committee for potential classification as sexual perpetrators, as well as for removal of an inmate from security detention who was previously classified as a sexual perpetrator. Sligh attests that when a referral comes to the Committee, the Committee researches the individual's history and discusses all aspects of the case, including looking at the individual's disciplinary charges and convictions, current and previous criminal convictions, and previous institutional behavior. The Committee then votes as to whether or not the individual should be designated as a sexual perpetrator. If so, then a second vote is taken to determine if the individual should be placed in security detention.

Sligh attests that security detention is a form of administrative detention or segregation within the Department of Corrections in which an individual is housed and recreated alone in the SMU at the inmate's respective institution. Sligh attests that security detention is not a form of punishment, but is designed to segregate an inmate who has been determined to pose a threat to the security and/or safety of the institution from other inmates, and to place that individual in a housing unit that has controlled movement and an increased security presence. Sligh further attests that once the Committee has reached a determination, its recommendation is forwarded to the Director of Operations (the Defendant Ward), who then reviews the recommendation, makes any needed modifications, and then either approves or denies the recommendation. Sligh attests that, if the recommendation is approved, the findings are sent to the inmate, who must sign that he has



been informed of the Committee's findings. A copy of the Committee's findings is also sent to the Warden at the inmate's institution. The Warden then sets up an inmate classification hearing that is held to formalize the classification process regarding the inmate in question. Ward attests that the memorandum containing the Committee's findings also explains that the inmate may appeal this decision to the Director of the South Carolina Department of Corrections (the Defendant Ozmint).

Sligh attests that, in Plaintiff's case, a referral was sent to the PREA Committee regarding the Plaintiff, who had been charged through the inmate disciplinary process with the sexual assault of two different inmates within a one year period. Sligh attests that both of these disciplinary charges were dismissed due to a lack of physical evidence, but that when researching the referral and Plaintiff's history it was discovered that Plaintiff is serving a twelve (12) year sentence for criminal sexual conduct with a minor. Sligh attests that since Plaintiff entered the SCDC system prior to the PREA policy being enacted, he had not been screened during his reception and evaluation period. Sligh attests that after reviewing Plaintiff's criminal and disciplinary history, the Committee voted to recommend that Plaintiff be designated to PREA-SD status, and that that recommendation was forwarded to the Director of Operations and was approved.

Sligh attests that Plaintiff appealed the PREA Committee's findings, but his appeal was denied and the findings upheld. Sligh also attests that Plaintiff did not forfeit any good time credits or earned work credits that he had accrued as a result of the Committee's designation, and that he is still eligible to earn good time credits. Due to his current classification and custody status, however, Plaintiff is not currently eligible for the privilege of a work assignment.

Sligh attests that the PREA Committee was formed and the PREA policy passed in response to the United States Congress enacting the Prison Rape Elimination Act of 2003. The



purpose of the policy and review committee is to attempt to identify inmates who pose a threat to the safety and security of the inmate population and to reduce the incidents of prison rape or sexual assault within the prison setting. Sligh attests that the designation of sexual perpetrator under the PREA policy is used to inform staff members to closely monitor and review the inmate in question in regards to classification decisions, room assignments, and sexually related disciplinary infractions. See generally Sligh Affidavit.

Plaintiff did not submit any exhibits as an attachment to his memorandum in opposition to summary judgment; however, Plaintiff did submit exhibits as an attachment to a motion filed March 19, 2009, which the undersigned has considered in issuing this opinion. These attachments include a copy of the PREA Review Committee findings dated April 2, 2008, wherein it was recommended that Plaintiff be placed in security detention status. This document shows that Plaintiff was served with the Committee's findings on April 7, 2008. Plaintiff has also submitted a copy of his Institutional Classification Committee Review dated April 7, 2008, which notes that Plaintiff was initially placed in SD following Plaintiff's designation as a sexual perpetrator. Plaintiff's exhibits also include a copy of the decision by the Defendant Ozmint on Plaintiff's appeal of his PREA-SD status, wherein Ozmint denied his appeal on May 21, 2008.

**Discussion**

Summary judgment "shall be rendered forthwith if the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to judgment as a matter of law." Rule 56(c), Fed.R.Civ.P. The moving party has the burden of proving that judgment on the pleadings is appropriate. Once the moving party makes this showing, however, the opposing party



must respond to the motion with "specific facts showing there is a genuine issue for trial." Rule 56(e), Fed.R.Civ.P. Further, while the Federal Court is charged with liberally construing a complaint filed by a pro se litigant to allow the development of a potentially meritorious case, see Cruz v. Beto, 405 U.S. 319 (1972); Haines v. Kerner, 404 U.S. 519 (1972), the requirement of liberal construction does not mean that the Court can ignore a clear failure in the pleadings to allege facts which set forth a Federal claim, nor can the Court assume the existence of a genuine issue of material fact where none exists. Weller v. Dep't of Social Services, 901 F.2d 387 (4th Cir. 1990).

**I.**

**(Exhaustion of Administrative Remedies)**

Defendants first assert, inter alia, that all of Plaintiff's claims except for Plaintiff's claim relating to his allegedly improper classification should be dismissed because Plaintiff failed to exhaust his administrative remedies with respect to these other claims prior to filing this lawsuit.[7] Pursuant to 42 U.S.C. § 1997e(a), "[n]o action shall be brought with respect to prison conditions under section 1983 of this Title, or any other federal law, by a prisoner confined in any jail, prison, or other correctional facility until such administrative remedies as are available are exhausted."

The Defendants have the burden of showing that Plaintiff failed to exhaust his administrative remedies. See Anderson v. XYZ Correctional Health Services, Inc., 407 F.3d 674, 683 (4th Cir. 2005) [inmate's failure to exhaust administrative remedies is an affirmative defense to be both pled and proven by the Defendant]; Jones v. Bock, 127 S.Ct. 910 (2007). To meet this

---

[7]Defendants also complain in their Reply Memorandum that Plaintiff discusses some new issues in his memorandum in opposition to summary judgment which were never raised by Plaintiff as claims in his complaints. The undersigned has only considered Plaintiff's claims as are set forth in his verified complaints, as amended.



burden, Defendants have submitted the affidavit from Ann Hallman, who attests that she is an Inmate Grievance Administrator with the Department of Corrections, that she has reviewed Plaintiff's grievance history for the relevant time period (which she describes as April through July 2008), and that the only grievance Plaintiff's filed on which he received a final agency decision was his grievance of the PREA Committee's decision regarding his classification.

Significantly, even though the Defendants argue in their motion for summary judgment that Plaintiff has not exhausted his administrative remedies with respect to any claims being asserted except his claim concerning his classification, and have provided a sworn affidavit in support of this assertion, Plaintiff does not even address this issue in his memorandum opposing summary judgment, other than to state on Page 8 of his memorandum that "[d]ue to Plaintiff exhausting his State's remedies, Plaintiff request that Defendants request for strike against Plaintiff be dismissed . . . ." It is further worth noting that, in Plaintiff's verified complaint in Civil Action 0:08-2626, Plaintiff specifically states that he had not received a final Agency/Departmental/Institution answer or determination concerning his grievance, listing two (2) grievance numbers (RCI-57-08 and KCI-483-08). As previously noted, a copy of KCI-483-08 is attached to Plaintiff's complaint, with this document noting that it was a copy (or the same claim) of RCI-57-08, which was denied under Step 2 of the grievance process. This grievance, which Hallman concedes in her affidavit has been exhausted, solely addresses Plaintiff's classification under PREA. No other exhibits have been provided by the Plaintiff, nor does Plaintiff make any argument as to why he should deemed to have exhausted any of his other claims.

After careful consideration of this evidence and the arguments presented, the undersigned is constrained to agree with the Defendants that there is no evidence before the Court



sufficient to raise a genuine issue of fact as to whether Plaintiff exhausted any of his claims prior to filing this lawsuit, other than his claim dealing with his classification. Therefore, Defendants having established their affirmative defense with respect to these other claims, they should be dismissed. Cf. Hyde v. South Carolina Dep't of Mental Health, 442 S.E.2d 582, 583 (S.C. 1994) ["Where an adequate administrative remedy is available to determine a question of fact, one must purse the administrative remedy or be precluded from seeking relief in the courts"]; see also Harvey v. City of Philadelphia, 253 F.Supp.2d 827, 829 (E.D.Pa. 2003)[Summary judgment granted where Plaintiff claimed to have exhausted administrative remedies, but did not present any evidence to challenge defendants' evidence that he did not pursue his administrative remedies].

## II.

### (Classification Claim)

Plaintiff challenges his placement in KCI's special management unit under the Department of Corrections PREA policy. Defendants assert that Plaintiff has failed to show a violation of his constitutional rights with respect to this placement, and the undersigned agrees, as Plaintiff has no constitutional right to placement in any particular custody classification. Neal v. Shimoda, 131 F.3d 818, 828 (9th Cir. 1997) ["[A] prisoner does not have a constitutional right to be housed at a particular institution,..., [or] to receive a particular security classification...."]; Neals v. Norwood, 59 F.3d 530, 533 (5th Cir. 1995) ["[A] prison inmate does not have a protectable liberty or property interest in his custodial classification and an inmate's disagreement with a classification is insufficient to establish a constitutional violation."].

In order to show a constitutional violation with respect to a custody classification, the conditions must exceed the sentence imposed or create an atypical or significant hardship in violation



of a protected liberty interest. Sandin v. Conner, 515 U.S. 472, 483-484 (1995). There is no such evidence in this case. Further, there is no evidence to show, and indeed Plaintiff does not even allege, that the Department of Corrections did not follow the procedure for determining whether he should be classified as a PREA-SD; rather, he simply alleges that the Committee and reviewing authorities reached the wrong conclusion (i.e. that he should not have received this classification and been taken out of the general population). This allegation, standing alone, does not give rise to a constitutional claim, as Plaintiff has failed to present any evidence to show that his classification and resulting conditions of confinement exceed the terms of his sentence or create an atypical or significant hardship. Rish v Johnson, 131 F.3d 1092, 1096 (4th Cir. 1997)["Only extreme deprivations are adequate to satisfy the objective component of an Eighth Amendment claim regarding conditions of confinement"]; Hewitt v. Helms, 459 U.S. 460, 468 (1983) ["The transfer of an inmate to less amenable and more restrictive quarters for non-punitive reasons is well within the terms of confinement ordinarily contemplated by a prison sentence."]; Burke v. Corrections Corp. of America, No. 09-3068, 2009 WL 1631579 at *2 n. 3 (D.Kan. June 10, 2009)[Plaintiff's allegation of error in his custodial classification (Plaintiff was reclassified pursuant to PREA) subject to dismissal because a change in prisoner's classification generally does not implicate a protected liberty interest].; Hill v. Norris, No. 07-270, 2007 WL 4219444 at * 1 (E.D.Ark. Nov. 28, 2007)[No constitutional violation where inmate was confined in single-cell housing as a result of his reclassification following PREA]; see generally Sweet v. South Carolina Department of Corrections, 529 F.2d 854, 859 (4th Cir. 1975)(en banc)[describing Federal Court's deference to prison administrators and all administrative matters unless the condition arises to the level of a constitutional violation]; see also Brown v. Evatt, 470 S.E.2d 848 (S.C. 1996)[South Carolina statues



and regulations regarding classification of prisoners create no liberty interest in a security or custody classification].

While Plaintiff argues in his opposition memorandum that he should be afforded "periodic review" of his custody status, and that a failure to receive such reviews creates an "atypical and significant" hardship in violation of Sandin, the question (at least for purposes of Plaintiff's constitutional claim)[8] is not whether or how often he should be being provided with custody reviews, but whether his classification is itself unconstitutional. No evidence has been presented to create a genuine issue of fact with respect to that question. See generally Ajaj v. U.S., 479 F.Supp.2d 501, 514-515 (D.S.C. 2007); see also, Slezak v. Evatt, 21 F.3d 590, 594 (4th Cir. 1994)[the Constitution vests no liberty interest in inmates retaining or receiving any particular security or custody status as long as the conditions or degree of confinement is within the sentence imposed], cert. denied, 513 U.S. 889, 115 S.Ct. 235, 130 L.Ed.2d 158 (1994); Neal, 131 F.3d at 828 ["[A] prisoner does not have a constitutional right to be housed at a particular institution, ..., [or] to receive a particular security classification...."]; Neals, 59 F.3d at 533 ["[A] prison inmate does not have a protectable liberty or property interest in his custodial classification and an inmate's disagreement with a classification is insufficient to establish a constitutional violation."]; Hewitt, 459 U.S. at 468 ["The transfer of an inmate to less amenable and more restrictive quarters for non-punitive reasons is well within the terms of confinement ordinarily contemplated by a prison sentence."]; Altizer v. Paderick,

---

[8]Defendants correctly note that this question of how often his status is "reviewed" was not raised by Plaintiff in his complaints. In any event, Sligh attests in his affidavit that the PREA Committee meets to determine whether removal of an inmate from security detention is warranted, and Plaintiff has provided no evidence to show that he has been denied any review to which he is entitled. House v. New Castle County, 824 F.Supp. 477, 485 (D.Md. 1993)[Plaintiff's conclusory allegations insufficient to maintain claim].

- 14 -



569 F.2d 812, 813 (4th Cir. 1978), cert. denied, 435 U.S. 1009 (1978).

Further, Plaintiff's argument in his brief that his rights were violated because he did not have an opportunity to respond to, or contest, his classification, is shown to be without merit by his own exhibits (attached to his filing of March 19, 2009). See Exhibits [PREA Review Committee Findings dated April 2, 2008, with Notice of Right to Appeal and bearing Plaintiff's signature; Inmate Correspondence dated May 21, 2008, wherein the Defendant Ozmint denied Plaintiff's Appeal].[9] Indeed, the failure of prison authorities to take appropriate actions with respect to sexual perpetrators in light of both the enactment of PREA and in consideration of prison officials' own affirmative obligation to ensure that prisoners are housed in as safe and non-threatening environment as possible, could possibly subject them to liability if they *failed* to screen inmates for possible PREA status. Cf. Riccardo v. Raush, 375 F.3d 521, 525-527, 536-537 (7th Cir. 2004); Woodford v. Ngo, 548 U.S. 81, 118 (2006)[Wherein the U.S. Supreme Court stated that "the sovereign does have a constitutional duty to 'provide humane conditions of confinement' . . . .[and noting that] in enacting [PREA] Congress estimated that some one million people have been sexually assaulted in the Nation's prisons over the last 20 years . . . ."], (citing Farmer v. Brennan, 511 U.S. 825, 832 (1994)); Hines v. South Carolina Dept. of Corrections, 148 F.3d 353, 358 (4th Cir. 1998)["[O]nce the Department [of Corrections] demonstrates that it is pursuing a legitimate governmental objective, and

---

[9]Plaintiff has also failed to present any evidence to show that he has lost good time credits as a result of his PREA-SD status. See Sligh Affidavit, ¶ 20; House, 824 F.Supp at 485 [conclusory allegations insufficient to maintain claim]. As for his work claim, no constitutional violation has occurred due to Plaintiff's classification, even if as a result he is unable to work. Ingram v. Papalia, 804 F.2d 595, 596 (10th Cir. 1986)["The Constitution does not create a property or liberty interest in prison employment."]; Ridgeway v. Dayl, No. 05 1549, 2006 WL 2050586, at * 4 (D.S.C. July 14, 2006)["Assignments of work to prisoners is a matter of prison administration, within the direction of prison administrators, and inmates do not have a liberty interest derived from the due process clause, nor do they have a property interest in a specific job or any job at all while incarcerated"].



demonstrates some minimally rational relationship between that objective and the means chosen to achieve that objective, we must approve of those means"]; Turner v. Safely, 482 U.S. 78, 89-90 (1987); 42 U.S.C. § 15601 (PREA Act)["Congress makes the following findings: . . . [13] The high incidence of sexual assault within prisons involves actual and potential violations of the United States Constitution"]; In re Long Term Administrative Segregation of Inmates Designated as Five Percenters, 174 F.3d 464, 469 (4th Cir. 1999)[Upholding classification policy that seeks to administratively segregate certain inmates who have been found to be threats to the safety and security of the facility]; but see cf. Moorman v. Herrington, No. 08-27, 2009 WL 2020669 at * 2 (W.D.Ky. July 9, 2009) "[S]everal district courts have found that the Prison Rape Elimination Act ("PREA"), 42 U.S.C. § 15601 et seq., 'does not create a right of action that is privately enforceable by an individual civil litigant.'"] (quoting Le Masters v. Fabian, No. 09-702, 2009 WL 1405176 at * 2 (D.Minn. May 18, 2009)).

Finally, while Plaintiff argues that the Defendants have violated certain SCDC policies or procedures in placing him in this custody classification, even if this claim is true, violations of prison policies and/or procedures do not equate to constitutional violations. Keeler v. Pea, 782 F.Supp. 42, 44 (D.S.C. 1992) [violations of prison policies which fail to reach the level of a constitutional violation are not actionable under § 1983]); see also Scott v. Hamidullah, No. 05-3027, 2007 WL 904803 *5 n.6 (D.S.C. Mar. 21, 2007) (citing Riccio v. County of Fairfax, Virginia, 907 F.2d 1459, 1469 (4th Cir. 1990)); Johnson v. S.C. Dep't of Corrections, No. 06-2062, 2007 WL 904826 at *12 (D.S.C. Mar. 21, 2007) ["Plaintiff's allegation that Defendants did not follow their own policies fails, as the failure of prison officials to follow their own policies or procedures, standing alone, does not amount to a constitutional violation."] (citing Riccio, 907 F.2d at 1469 [if



state law grants more procedural rights than the Constitution requires, a state's failure to abide by that law is not a federal due process issue]). *Cf.* Paul v. Davis, 424 U.S. 693, 701 (1976) [not every claim which may set forth a cause of action under a state tort law is sufficient to set forth a claim for a violation of a constitutional right].

This claim is without merit and should be dismissed.

### Conclusion[10]

Based on the foregoing, it is recommended that the Defendants' Motion for summary judgment with regard to Plaintiff's § 1983 classification claim be **granted**, and that this claim be **dismissed**, with prejudice. All of the Plaintiff's remaining claims being asserted under § 1983 should be **dismissed**, without prejudice, for failure to exhaust administrative remedies. Hyde, 442 S.E.2d at 583; Anderson, 407 F.3d at 638.

Finally, with respect to the numerous state law claims and violations asserted by Plaintiff in his complaint in Civil Action No. 9:08-3076, if the Court adopts the recommendations contained herein with respect to Plaintiff's Federal claims, Plaintiff's state law claims will be the only claims remaining in this law suit. In cases which are removed to federal court from state court because they contain some federal claims, where those federal claims are subsequently dismissed, the case should be remanded back to state court for resolution of the remaining state law claims under United Mine Workers v. Gibbs, 383 U.S. 715 (1966), and its progeny. See In Re Conklin, 946 F.2d 306, 324 (4th Cir. 1991); Nicol v. Imagematrix, Inc., 767 F.Supp. 744, 746, 749 (E.D.Va. 1991); Mills v. Leath, 709 F.Supp. 671, 675-676 (D.S.C. 1988); Carnegie-Melon v. Cohill, 484 U.S. 343

---

[10]In addition to the defenses discussed herein, Defendants also argue entitlement to summary judgment on various additional grounds. As Plaintiff's case[s] are subject to dismissal for the reasons discussed, these additional defenses have not been addressed.



(1988); Taylor v. Waters, 81 F.3d 429, 437 (4th Cir. 1996). See also S.C.Code Ann. § 15-78-20(e) (part of the South Carolina Tort Claims Act)[providing that the State of South Carolina does not waive Eleventh Amendment immunity, consents to suit only in a court of the State of South Carolina, and does not consent to suit in a federal court or in a court of another state].

The parties are referred to the Notice Page attached hereto.

_____
Bristow Marchant
United States Magistrate Judge

August 25, 2009

Charleston, South Carolina



**Notice of Right to File Objections to Report and Recommendation**

The parties are advised that they may file specific written objections to this Report and Recommendation with the District Court Judge. Objections must specifically identify the portions of the Report and Recommendation to which objections are made and the basis for such objections. In the absence of a timely filed objection, a district court need not conduct a de novo review, but instead must "only satisfy itself that there is no clear error on the face of the record in order to accept the recommendation." *Diamond v. Colonial Life & Acc. Ins. Co.*, 416 F.3d 310 (4th Cir. 2005).

Specific written objections must be filed within ten (10) days of the date of service of this Report and Recommendation. 28 U.S.C. § 636(b)(1); Fed. R. Civ. P. 72(b). The time calculation of this ten-day period excludes weekends and holidays and provides for an additional three (3) days for filing by mail. Fed. R. Civ. P. 6(a) & (e). Filing by mail pursuant to Fed. R. Civ. P. 5 may be accomplished by mailing objections to:

**Larry W. Propes, Clerk
United States District Court
Post Office Box 835
Charleston, South Carolina 29402**

**Failure to timely file specific written objections to this Report and Recommendation will result in waiver of the right to appeal from a judgment of the District Court based upon such Recommendation.** 28 U.S.C. § 636(b)(1); *Thomas v. Arn*, 474 U.S. 140 (1985); *United States v. Schronce*, 727 F.2d 91 (4th Cir. 1984); *Wright v. Collins*, 766 F.2d 841 (4th Cir. 1985).

